UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 22-00093 (CRC) |
| : | |
| SHELDON MARBLEY, : | |
| SHAMEKA HAYES, : | |
| : | |
| Defendants. : | |

### GOVERNMENT'S MEMORANDUM
### IN SUPPORT OF PRETRIAL DETENTION AS BOTH DEFENDANTS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that both Sheldon Marbley and Shameka Hayes be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(B) [Maximum Sentence of Life Imprisonment], 18 U.S.C. § 3142(f)(1)(C) [Serious Drug Felony], and 18 U.S.C. § 3142(f)(2)(A) [Serious Risk of Flight]. With respect to each defendant, there is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the Defendants' appearance in this case and otherwise protect the community, pursuant to 18 U.S.C. § 3142(e)(3)(A).

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

### APPLICABLE LAW

Pursuant to 18 U.S.C. §§ 3142(e)(3)(A), there exists a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the Defendants' appearance in this case and otherwise protect the community. The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625,

1

626 (D.C. Cir. 1988)). For a detention decision based upon risk of flight, the government only need prove by a preponderance of the evidence that there are no conditions or combinations of conditions that will assure the defendant's appearance as required. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). Furthermore, at a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In considering whether there are conditions of release, which will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. '3142(g). In consideration of these factors, along with the applicable rebuttable presumption, the government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the Defendants' appearance at future proceedings.

## BACKGROUND

On the morning of January 28, 2022, medical personnel and MPD began responding to a barrage of opioid overdoses all clustered around the same area of Southwest, Washington D.C. In what can only be described as a mass casualty event, at least 9 victims suffered fatal overdoses and 5 victims suffered non-fatal overdoses from drugs believed to have been distributed on or about January 28, 2022. From the scene of several overdoses, agents recovered similar small, colored, plastic capsules of suspected drug residue or narcotics. Preliminary testing of some of these capsules indicated the presence of butryl fentanyl and cocaine, while a DEA confirmatory

lab test indicated the presence of Para-Flurofentanyl and cocaine in at least four capsules. Based on the tight geographical cluster of the overdoses, the short time between the overdoses, and the similar capsules found on several overdose scenes, MPD suspected that all of the drugs were distributed from the same supplier operating from Southwest, Washington D.C.

On the same morning that these overdoses occurred, the male and female victims referenced in Counts Two and Three of the Indictment traveled to Half and O Street to purchase what they believed was crack cocaine. Both indicated that they had been purchasing crack from the same two individuals, a male and female (who they subsequently identified as the two defendants), for several months. The victims indicated that the defendants were selling them crack out of a Mazda, which they would park at Half and O Street. Although the victims had been buying crack from the defendants for months, on this occasion, they noted that the "crack" they purchased was packaged differently—in the small capsules described above. After the victims purchased several of these capsules from the defendants, the male victim smoked some of the narcotics while driving away from the scene. Immediately, the male victim went "blind", could no longer drive, and passed out before he could stop the car. Fortunately, the female victim, who was in the passenger seat, was able to pull the car to the side of the road and call 911.

Because EMS was tending to another nearby overdose (that was suspected from the same drugs), they arrived quickly and administered Narcan to the male victim, which resuscitated him and is believed to have saved his life. Unfortunately, on the same day that the male victim was released from GW hospital, the female victim in this case overdosed from the same narcotics purchased from the defendants. When EMS arrived, the female victim was passed out, but fortunately, EMS was able to revive her.

In interviews with law enforcement, both the male and female victim in this case have

identified the two defendants as the individuals who they regularly purchased crack cocaine from and who they purchased the drugs from on January 28th that led to their overdoses, which required medical intervention. Specifically, the male victim identified "Shelton" as the one who sold him the drugs and indicated that on the day in question, and 95% of the time on previous occasions, Sheldon was with his girlfriend, who regularly handled the drugs. The male victim signed a photo of Defendant Sheldon Marbley and identified Defendant Shameka Hayes in several photos. The female victim also immediately identified Defendant Sheldon Marbley in a photo. She then identified Defendant Shameka Hayes by indicating, "yeah it looks like her," but indicated that she was "not too sure" when asked by law enforcement asked about her confidence level.[1]

As part of its investigation, MPD obtained CCTV footage overlooking Half and O Street, where the defendants were believed to have been selling narcotics. Sure enough, from approximately 8:30-11:15 a.m., a grey Mazda, registered to Defendant Shameka Hayes, was parked on the block. From the CCTV footage, law enforcement was able to identify both Defendant Hayes and Defendant Marbley present on scene engaging in multiple suspected narcotics sales to multiple customers. Indeed, based on the CCTV footage, law enforcement has identified at least 8 overdose victims (including the two victims referenced in the Indictment) who traveled to the Mazda on the morning of January 28th, and overdosed immediately afterwards.

Law enforcement was also able to obtain additional surveillance footage and BWC from a nearby apartment building where yet another female victim suffered a non-fatal overdose on January 26th and a fatal overdose on the morning of January 28th. A review of the BWC footage

---

1 While the defense may choose to highlight the female's lack of confidence, as described below, several pieces of evidence corroborate Defendant Haye's presence on the scene. The Mazda from which several victims were purchasing drugs was registered to Defendant Hayes. Similarly, at least one cell phone subscribed to Hayes was hitting nearby cell towers and also showed toll records with several overdose victims. Finally, Defendant Hayes is seen on CCTV footage at the distribution site with Defendant Marbley.

reveals that Defendant Hayes was on scene for both overdoses and indicated that she was "staying" with the female victim. From the victim's apartment, agents recovered several empty capsules, as well as four capsules in the victim's sock, which tested positive for cocaine and Para-Flurofentanyl. Surveillance footage from the apartment building indicates that Defendant Hayes and Defendant Marbley were seen walking out of the lobby of this building on January 27th. Then, on January 28th, *after* Defendant Hayes was present for the lethal overdose of the female victim who she was "staying with", CCTV footage shows that Defendant Hayes traveled to Half and O, where she and Defendant Marbley engaged in what can only be described as a "flash sale" of narcotics to multiple customers, several of whom would then suffer fatal and non-fatal overdoses.[2]

## ARGUMENT

**The Defendants Should Be Detained Pending Trial Because They Pose a Danger to the Community and Risk of Flight**

In light of the nature and circumstances of the offenses charged, the weight of the evidence against each defendant, each defendant's history and characteristics, and the dangers to the community posed by any defendant's release, the defendants cannot overcome the presumption that they are a danger to the community and a risk of nonappearance. To the contrary, these factors establish that the presumption is correct.

    A.    **The nature and circumstances of the offense**

The nature and circumstances of the charged offenses weigh in favor of detention. The grand jury found probable cause to believe that both defendants were engaged in a conspiracy to distribute cocaine and Para-Fluorofentanyl on January 28, 2022, and that they distributed cocaine

---

2 As described above, law enforcement has identified at least 8 overdose victims who traveled to the Mazda based on CCTV footage. Defendant Hayes was present for 7 of the sales.

and Para-Flurofentanyl to a male and a female victim on the same date, resulting in substantial bodily injury.

At this point in the opioid epidemic, it is common knowledge that fentanyl kills. According to the DEA, "Fentanyl is a Schedule II controlled substance that is similar to morphine but about 100 times more potent. . . . Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin, methamphetamine, and cocaine, increasing the likelihood of a fatal interaction. . . . Two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage."[3] According to the CDC, overdose deaths in the United States continue to rise, with more than 80 percent of such deaths attributed to synthetic opioids, primarily fentanyl:[4] In 2021, the United States set a record high, with drug overdose deaths toppling 100,000 and fentanyl causing nearly two-thirds of these deaths.[5]

Here, the defendants sold a mixture and substance of Para-Flurofentanyl and cocaine to multiple victims who believed they were purchasing crack cocaine. Although only two distributions resulting in substantial bodily are charged in the Indictment, the evidence gathered thus far indicates that the two defendants sold to numerous victims, at least three of which overdosed and died shortly after approaching both defendants in their Mazda at Half and O Street. The nature and circumstances of the offense are made even worse in this case when considering the evidence that both defendants should have been aware that the drugs they were selling were potentially lethal. Again, even before defendants were caught on CCTV selling narcotics on the morning of January 28th, Defendant Hayes witnessed the female victim with whom she was "staying" overdose on January 26th and then early in the morning on January 28th. Immediately

---

[3] https://www.dea.gov/resources/facts-about-fentanyl
[4] https://www.cfr.org/in-brief/us-fentanyl-crisis-what-know
[5] https://www.cnn.com/2021/11/17/health/drug-overdose-deaths-record-high/index.html

afterwards, defendants then made the conscious choice of selling what appears to be the same drugs, in a flash sale, to multiple victims who suffered overdoses.

Congress has determined that the overdose problem in this country is so severe that it has chosen to put a mandatory minimum sentence of 20 years to anyone who distributes a dangerous narcotic that results in substantial bodily injury or death. Here, defendants are charged in two counts, each with a mandatory minimum sentence of 20 years. In addition, based on the evidence obtained thus far, defendants are likely to be charged with additional counts of distribution resulting in substantial bodily injury or death, further enhancing their exposure. Given these lengthy prison sentences, defendants have a high incentive to flee if they are released. In addition, since there are a variety of witnesses out there that are connected to several distributions that the Government has not yet charged, the defendants have additional incentives to interfere with those witnesses and potentially obstruct justice.  The stiff mandatory minimums in this case reflect the egregious nature of the conduct in this case: dealing narcotics that killed over 100,000 people this year nationwide and potentially killed nine individuals on or about January 28th in Washington D.C.

### B. The weight of the evidence against each defendant

The weight of the evidence against each defendant is extremely strong, as summarized by the following evidence:

- *Both* victims in this case identified *both* defendants as the ones from whom they went to purchase their drugs from on January 28, 2022. Both victims indicated that they had purchased crack cocaine from the same couple for several months, but on the day in question, the drugs they purchased were packaged differently (in capsules).

- Both victims required emergency medical attention shortly after smoking the drugs they purchased from the defendants. The male victim immediately passed out behind the wheel of his car, needed to be resuscitated with Narcan, and had to go to the hospital. The female victim was found passed out and required emergency medical attention. Although she refused to go to the hospital, medical personnel provided her with Narcan and indicated that the risks of not going to the hospital could include death.

- The male victim immediately identified Defendant Marbley in a photograph and indicated that he was purchasing drugs from "Shelton." The male victim said that Shelton was with his girlfriend 95% of the time and was with his girlfriend on the day he purchased the drugs that caused him to overdose. The male victim identified Defendant Hayes in several photos and described how she would often handle and hold the drugs for Shelton.

- The female victim also immediately identified Defendant Marbley in a photograph as the person who provided her and the male victim with drugs that led to her and the male victim's overdoses, saying she was 100% sure that he was the person. She then identified Defendant Hayes by reporting, "yeah, it looks like her," but then qualified that she was "not too sure" when asked about her confidence level.

- According to CCTV footage, a Mazda, registered to Defendant Hayes, was present at Half and O Street on January 28th. The footage shows Defendant Hayes and Marbley present throughout the morning while multiple individuals walk up to the Mazda and appear to purchase narcotics. Law enforcement has identified at least 8 overdose victims who traveled to the Mazda based on CCTV footage. Defendant

8

Hayes was present for 7 of the sales while Defendant Marbley was present for all 8 sales. The CCTV footage shows the male and female victim referenced in the Indictment travel to the Mazda to purchase narcotics.

- Cell-Site data for a phone subscribed to Defendant Hayes for January 28th shows her hitting cell-towers that are consistent with being present at Half and O Street (where the distributions were taking place).

- Toll records for two phones subscribed to Defendant Hayes (one of which was believed to be used by Defendant Marbley) show contacts with multiple overdose victims.

- Unique capsules, which were identified and referenced by the male and female victims referenced in the Indictment, were found on the scene of multiple overdose victims. Several of these capsules have preliminarily tested positive for butryl fentanyl (consistent with Para-Flurofentanyl) and cocaine. The same capsules were also found at the scene of a female who overdosed and died on the morning of January 28th, where Defendant Hayes was present and indicated was the location where she "was staying." Four of the capsules lab-tested positive for cocaine and Para-Flurofentanyl.

- After multiple overdoses occurred on January 28th, defendants did not return to a nearby hotel where they had a reservation. They have not returned to the area since the date of the overdoses and "dropped" two phones subscribed to Defendant Hayes. License plate readers indicate that shortly after the overdoses occurred, Defendant Hayes' vehicle traveled to Maryland and has not registered with any license plate reader since, which is an indicator that defendants abandoned the

vehicle.

- Defendants were both arrested in Northwest D.C., essentially hiding in a drug user's apartment, after law enforcement tracked two new phones subscribed to Defendant Hayes. A witness indicated to law enforcement that Defendant Marbley stated that that they were keeping a low profile after selling fentanyl to at least three individuals who died.

### C. The history and characteristics of the Defendants

The history and characteristics of the defendants also weigh in favor of detention. Although neither Defendant has a long list of convictions or arrests, their substantial disregard for human life and actions in this case demonstrate that they are a danger to the community as well as a risk of flight. Defendant Marbley is 43 years old, with 1 prior conviction (for voluntary manslaughter), and 6 prior arrests. Meanwhile. Defendant Hayes is 33 years old with no prior convictions, but 1 prior arrest.

Irrespective of their criminal convictions, the demonstrated characteristics of these two defendants indicates that they are a danger to the community and are likely to flee. In this case, the evidence indicates that both defendants were aware of the lethality of the drugs they were selling after Defendant Hayes witnessed the woman she was staying with overdose on January 26th and then overdose and die on January 28th. Instead of being cautious with their drugs, the defendants did the exact opposite by engaging in what could only be described as a "flash sale" of narcotics at Half and O Street. Almost immediately after witnessing the lethal overdose of the woman she was staying with, Defendant Hayes joined Defendant Marbley at Half and O street to sell drugs to multiple customers, including to at least 7 overdose victims, 3 of which fatally overdosed. Thereafter, Defendants essentially fled the location, abandoned the Mazda, and dropped two

10

phones subscribed to Defendant Hayes, indicating a consciousness of guilt. Thereafter, they essentially hid out at an apartment of a drug user, who indicated that Defendant Marbley admitted that they had sold fentanyl to at least three people who died. The cruel indifference to human life, particularly to vulnerable and addicted drug users, that defendants have exhibited weighs in favor of detention.

### D. The nature and seriousness of the danger to any person or the community posed by the person's release

The fourth factor–the nature and seriousness of the danger to any person or the community posed by the person's release–also weighs in favor of detention. Each defendant's release poses a physical danger to the community. As previously stated, fentanyl is now the leading cause of overdose deaths in the United States, which hit a record high in 2021. Here, Defendants are charged with distributing fentanyl to two victims, each of whom suffered substantial bodily injury. In addition, the evidence thus far indicates that the defendants sold drugs to at least 7 overdose victims, 3 of which fatally overdosed. These distributions are made worse by the fact that all of the evidence indicates that the defendants knew that the drugs they were selling were lethal and that they knowingly distributed fentanyl after witnessing one victim's overdose death. Given the defendants' substantial disregard for human life, and their willingness to sell drugs they knew could cause death, each defendant's release would pose a serious danger to the community.

## CONCLUSION

For the reasons noted above, the government respectfully submits that clear and convincing evidence establishes that there are no conditions or combinations of conditions that will reasonably assure the safety of any other person and the community. The government also submits that a preponderance of the evidence establishes that each defendant is a serious risk of flight and no conditions or combinations of conditions will assure their appearance in Court. Accordingly, the

government respectfully requests that the Court grant the government's motion to detain each defendant pending trial in this case.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar Number 481052

                _/s/_David T. Henek_____
                DAVID T. HENEK
                Assistant United States Attorney
                Violent Crime and Narcotics Trafficking Section
                555 4th Street, N.W.
                Washington, D.C. 20530
                N.Y. Bar No. 5109111
                david.t.henek@usdoj.gov
                202-252-7825
                   \

## CERTIFICATE OF SERVICE

    I hereby certify that on this date, a copy of the foregoing Memorandum was sent via email to counsel for Defendants.

                _/s/_David T. Henek_____
                DAVID T. HENEK
                Assistant U.S. Attorney